UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------X
JOSE ARNLADO SOLIS VILLALTA,
individually and on behalf of all others
similarly situated,

      Plaintiff,

   -against-

101-11 86 AVE. CORP, d/b/a JC & SONS
HOME IMPROVEMENT CORP., JUAN
ARCE, as an individual, and JC & SONS
HOME IMPROVEMENT CORP,

      Defendants.
----------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CV-0249 (RRM) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On January 14, 2020, Plaintiff Jose Arnlado Solis Villalta, also known as Jose Villalta ("Plaintiff"), initiated this action individually and on behalf of all others similarly situated against Defendants 101-11 86 Ave. Corp., d/b/a JC & Sons Home Improvement Corp., Juan Arce, as an individual, and JC & Sons Home Improvement Corp. ("JC & Sons") (collectively "Defendants"). (*See* Complaint ("Compl."), ECF No. 1.) Plaintiff seeks damages for unpaid wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and the New York Labor Law, Art. 6 § 190 *et seq.* and Art. 19 § 650 *et seq.* ("NYLL").

Currently pending before this Court is Plaintiff's motion for conditional certification as a collective action under the FLSA, which Defendants oppose. (*See* Pl.'s Mot., ECF No. 29; Pl.'s Aff. in Supp. of Mot. ("Pl.'s Aff."), ECF No. 30; Pl.'s Mem. in Supp. of Mot. ("Pl.'s Mem."), ECF No. 31; Pl.'s Reply in Supp. of Mot. ("Pl.'s Reply"), ECF No. 40; Defs.' Decl. in Opp'n to Pls.' Mot. ("Defs.' Decl."), ECF No. 37; Defs.' Mem. in Opp'n to Pls.' Mot. ("Defs.' Mem."), ECF No. 38.)

For the reasons that follow, Plaintiff's motion is granted.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

As noted above, Plaintiff Jose Villalta initiated this collective action on January 14, 2020. (*See* Compl., ECF No. 1.) Plaintiff filed an amended complaint on July 16, 2021, which is the operative complaint in this action. (Amended Complaint ("Am. Compl."), ECF No. 28.)

According to the amended complaint, JC & Sons is a Kew Gardens-based corporation, owned and operated by Defendant Juan Arce, that employs "between 20 and 30 employees within the past three years subjected to similar payment structures." (*Id.* ¶¶ 11–12, 30.) Plaintiff alleges that from October 2011 until in or around October 2019, he worked for Defendants performing his primary duties "as a roofing and siding concrete laborer, while performing other miscellaneous duties . . . ." (*Id.* ¶¶ 20–21.) He claims that he was paid "approximately $150 per day from in or around January 2014 until in or around December 2014, approximately $160 per day from in or around January 2015 until in or around December 2015 . . . ." (*id.* ¶ 22), approximately $170 per day from in or around January 2016 until in or around December 2017, and approximately $180 per day from in or around January 2018 until in or around December 2019."[2] (*Id.*) Plaintiff also alleges that he "worked approximately seventy-two

---

[1] It is well settled that a magistrate judge has authority to decide a motion for certification of a collective action. *See, e.g., Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *1 n.4 (E.D.N.Y. July 21, 2021); *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 383–84 (E.D.N.Y. 2010).

[2] The amended complaint states that Plaintiff was paid "approximately $170 per day from in or around January 2016 until in or around December 2017, and approximately $180 per day from in or around January 2017 until in or around December 2019." (Am. Compl., ECF No. 28, ¶ 22.) Plaintiff's allegations are in tension given that the amended complaint suggests that Plaintiff was paid either $170 per day or $180 per day from January 2017 until in or around December 2017. (*See id.*) Because resolving this factual discrepancy is beyond the scope of the instant motion, the Court need not address whether Plaintiff was paid $170 per day for two years (from January 2016 to December 2017) or $170 per day for one (1) year (from January 2016

(72) hours or more per week during his employment by Defendants from in or around January 2014 until in or around October 2019." (*Id.* ¶ 24.) Additionally, he claims that "Defendants did not pay [him] time and a half (1.5) for hours worked over forty (40), a blatant violation of the overtime provisions contained in the FLSA and NYLL." (*Id.*) Plaintiff also alleges that Defendants failed to post notices of minimum wage and overtime wage requirements and failed to keep payroll records. (*Id.* ¶¶ 25–26.)

Accordingly, Plaintiff's amended complaint alleges, *inter alia*, that Defendants willfully violated the overtime requirements of the FLSA and NYLL, as well as the wage and notice and spread of hours requirements under the NYLL. (*Id.* ¶¶ 25–26, 44–45, 49, 52, 55.)

On July 29, 2021, Plaintiff moved for an order conditionally certifying this case as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b), on behalf of all similarly situated, non-exempt employees of Defendants employed as roofing, siding, or concrete laborers (or other similarly titled professionals) within the last three (3) years. (Pl.'s Mot., ECF No. 29; Pl.'s Aff., ECF No. 30; Pl.'s Mem., ECF No. 31; *see also* Am. Compl., ECF No. 28, ¶ 29.) Opt-in Plaintiff Selvin Garrido Lobo consented to join as a Plaintiff on July 29, 2021. (*See* Garrido Aff., ECF No. 30-3; Pl.'s Mem., ECF No. 31, at 1.)[3] On October 12, 2021, the parties filed a joint status letter proposing a briefing schedule for the present motion, which the Court adopted on October 13, 2021. (*See* Oct. 12, 2021

---

to December 2016) at this stage. *See Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010) (observing that courts do not "resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations" in the context of decisions on certification of a collective action).

[3] The Court will now refer to "Plaintiff" as "Plaintiffs" throughout this Memorandum and Order (citations included) to collectively refer to both Plaintiff Villalta and Opt-in Plaintiff Garrido. Additionally, the Court refers to opt-in Plaintiff Selvin Garrido Lobo as "Selvin Garrido" or "Plaintiff Garrido" or "Garrido" because he signed his affidavit as Selvin Garrido and his affidavit refers to him as Selvin Garrido. (*See generally* Garrido Aff., ECF No. 30-3.)

Joint Status Letter, ECF No. 34; Oct. 13, 2021 ECF Order.) The motion was fully briefed as of December 6, 2021. (*See* Defs.' Decl., ECF No. 37; Defs.' Mem., ECF No. 38; Pls.' Reply, ECF No. 40.)

For the following reasons, the Court finds that Plaintiffs have made the requisite showing that Plaintiff Villalta, Opt-in Plaintiff Garrido, and Defendants' other employees were similarly situated in terms of Defendants' alleged FLSA overtime violations. Accordingly, conditional certification is warranted, subject to the time frame and other limitations outlined below.

## DISCUSSION

### I.   Legal Standard

Section 216(b) of the FLSA provides employees with a right of action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). To determine whether an employee should be permitted to bring a "collective action" under the FLSA, courts in the Second Circuit apply a two-step analysis for certification. *See Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010); *Zaldivar v. JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 316 (E.D.N.Y. 2016). "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555. If the Court finds at the first step that "the putative class is sufficiently similarly situated, the action will be conditionally certified and each class member may then consent in writing to 'opt-in' to the litigation." *Agonath v. Interstate Home Loans Ctr., Inc.*, No. 17-CV-5267 (JS) (SIL), 2019 WL 1060627, at *2 (E.D.N.Y. Mar. 6, 2019) (citing 29 U.S.C. § 216(b)). The second step, sometimes called the "decertification stage," involves determining "whether the opt-in plaintiffs are in fact similarly situated to the named plaintiffs," and is made with the benefit of a fuller

record. *Jibowu v. Target Corp.*, 492 F. Supp. 3d 87, 118 (E.D.N.Y. 2020); *see also Myers*, 624 F.3d at 555.

"The instant motion concerns only the first step: whether the proposed opt-in members are 'similarly situated' such that conditional certification should be granted." *Zaldivar*, 166 F. Supp. 3d at 317. Satisfying the first prong for conditional certification requires that the plaintiff "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *see also id.* ("[T]he purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." (emphasis in original)); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus of this inquiry . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated.").

At this first stage, district courts examine pleadings and affidavits, but "do[] not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 385 (E.D.N.Y. 2010). In addition, while the "modest factual showing" is deemed "a low standard of proof," it cannot be satisfied by "unsupported assertions." *Myers*, 624 F.3d at 555; *see also Thompson v. Glob. Contact Servs., LLC*, No. 20-CV-651 (MKB) (SJB), 2021 WL 3087568, at *3 (E.D.N.Y. July 21, 2021); *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016). For example, a plaintiff seeking certification must offer "concrete facts evidencing a common scheme or plan of wage and hour violations for employees engaged in different job functions." *Mata v. Foodbridge LLC*, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015).

Furthermore, "[w]here, as here, a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate scrutiny' should apply." *Korenblum*, 195 F. Supp. 3d at 480–81; *see also Jibowu*, 492 F. Supp. 3d at 119; *Gaston v. Valley Nat'l Bancorp*, No. 17-CV-1886 (FB) (SMG), 2018 WL 4158407, at *2 (E.D.N.Y. Aug. 30, 2018) (describing the "'modest-plus' standard as a 'sliding scale,' with progressively more scrutiny applied as more evidence enters the record"). *But see Chowdhury v. Duane Reade, Inc.*, No. 06-CV-2295 (GEL), 2007 WL 2873929, at *3 (S.D.N.Y. Oct. 2, 2007) (finding that "it would be inappropriate to make more than a 'preliminary determination' at this time, or to require plaintiff to meet a more stringent standard than that typically applied at the early stages of litigation"). As the court in *Jibowu* observed, "[t]his heightened standard is rooted in efficiency concerns, and a reviewing court should deny conditional certification if it determines that the solicitation of additional opt-ins through court-authorized notice would not promote efficient resolution of common issues." *Jibowu*, 492 F. Supp. 3d at 119 (internal quotation marks omitted). In light of the efficiency concerns described in *Jibowu*, the Court adopts a "'sliding scale' approach to the 'modest-plus' standard" in determining whether the potential opt-in plaintiffs are "similarly situated" to Plaintiff. *Id.* at 120; *see also id.* at 120 n.34.[4]

## II.   Analysis

As noted above, Plaintiffs now move for an order conditionally certifying this case as a collective action on behalf of all similarly situated, non-exempt employees of

---

[4] The parties recently moved to extend discovery pending the outcome of the instant motion (Jan. 3, 2022 Joint Letter, ECF No. 41), and the Court extended discovery until March 5, 2022 (Jan. 4, 2022 ECF Order). Accordingly, the case has not reached the stage where Plaintiffs should be held to a significantly more stringent standard. *Cf. Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787 (JCM), 2018 WL 1027161, at *3 (S.D.N.Y. Feb. 21, 2018).

Defendants who worked as roofing, siding, or concrete laborers (or other similarly titled professionals) within the last three (3) years, and for authorization to distribute notice of the action to potential opt-in plaintiffs. (*See* Am. Compl., ECF No. 28, ¶ 29; Pls.' Mem., ECF No. 31, at 1; Proposed Notice of Pendency and Consent Form ("Proposed Notice"), ECF No. 30-1.) Plaintiffs contend that "[a]ll of these employees are similarly situated because they were subject to the same payroll practices prohibited under the FLSA and New York Labor Law." (Pls.' Mem., ECF No. 31, at 3.) Defendants oppose Plaintiffs' motion for conditional certification and raise several objections to the proposed notice form submitted by Plaintiffs. (*See generally* Defs.' Decl., ECF No. 37; Defs.' Mem., ECF No. 38.)

As discussed below, the Court finds that Plaintiffs have made a "modest factual showing" that Plaintiff Villalta and the other roofing, siding, and concrete laborers were similarly situated in terms of Defendants' alleged FLSA overtime violations. Accordingly, conditional certification is warranted, subject to the time frame and other limitations outlined below.[5]

### A. Plaintiffs' Supporting Affidavits

In support of their motion for conditional certification, Plaintiffs have each submitted a sworn affidavit describing Defendants' allegedly unlawful employment practices. (*See* Villalta Aff., ECF No. 30-2; Garrido Aff., ECF No. 30-3.) Plaintiff Villalta's affidavit reiterates the allegations contained in the amended complaint regarding

---

[5] The Court notes that Defendants challenge the Complaint on various grounds, including the argument that Plaintiffs' claims are "insufficient to assert a cause of action under the [FLSA] and/or [NYLL]" (Defs.' Mem., ECF No. 38, at 2) because "[i]n the year 2019 the Defendant JC & HOME IMPROVEMENT, CORP., total gross revenue was not in excess of Five Hundred Thousand ($500,000.) Dollars" (Defs.' Decl., ECF No. 37). "But the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of 'similarly situated' plaintiffs can exist here." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997).

Defendants' alleged FLSA overtime violations with respect to him. (*See* Villalta Aff.,

ECF No. 30-2, ¶¶ 1–6.)

Opt-in Plaintiff Selvin Garrido states that he worked for Defendants as a roofer

and siding concrete laborer. (Garrido Aff., ECF No. 30-3, ¶ 2.) Specifically, Mr. Garrido

attests that he worked for Defendants from in or around June 2018 until in or around

May 2020. (*Id.* ¶ 1.) Mr. Garrido claims he "worked approximately seventy-two (72)

hours per week, or more, during [his] employment with Defendants" and that he "did

not receive time-and-a-half for each hour of overtime [he] worked." (*Id.* ¶¶ 3–4.) He

claims that he was paid:

> approximately $120 per day from in or around June 2018 until in or
> around December 2018, approximately $140 per day from in or around
> January 2019 until in or around December 2019, approximately $160 per
> day from in or around January 2020 until in or around May
> 2020 . . . regardless of the number of hours that [he] worked each week in
> total.

(*Id* ¶ 5.) Both Plaintiffs state that "Defendants have consistently employed at least thirty

(30) or thirty-five (35) other employees, with high turnover rate, who were paid the

same way" they were paid. (Villalta Aff., ECF No. 30-2, ¶ 8; *see also* Garrido Aff., ECF

No. 30-3, ¶ 8.) Plaintiffs aver that "[a]t any given time, [Defendant] Juan Arce would

split all the employees into 2-3 groups to work on different residential properties, and

each group consisted of approximately 10-15 employees." (Villalta Aff., ECF No. 30-2,

¶ 9; Garrido Aff., ECF No. 30-3, ¶ 9.) Both Plaintiffs list the following individuals as

employees in the groups: Ovidio, Luis, Wilfredo, Andrews, Carlos, Rolando, Edwin,

Elbin, Juan, Edwin, and Armando." (Villalta Aff., ECF No. 30-2, ¶ 11; Garrido Aff., ECF

No. 30-3, ¶ 11.) According to Plaintiffs, these employees were also each paid a flat daily

rate in cash each week and regularly worked more than forty (40) hours per week, but

were not paid for their overtime hours. (Villalta Aff., ECF No. 30-2, ¶¶ 11, 15; Garrido

Aff., ECF No. 30-3, ¶¶ 11, 15.) Plaintiffs further claim that "[a]ll these employees performed substantially similar duties to the duties that I performed during my employment, such as roofing and siding work on residential properties . . . ." (Villalta Aff., ECF No. 30-2, ¶ 10; Garrido Aff., ECF No. 30-3, ¶ 10.) In addition, Plaintiff Villalta stated in his affidavit that all of these employees "worked the same number of days, and on the same projects each week." (Villalta Aff., ECF No. 30-2, ¶ 13; *see also* Garrido Aff., ECF No. 30-3, ¶¶ 12–13.)

## B. Conditional Certification

The Court now turns to whether Plaintiffs have made the "'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see also Thompson*, 2021 WL 3087568, at *3 ("Key to this showing is whether plaintiffs 'provide actual evidence of a factual nexus between their situation and those that they claim are similarly situated rather than mere conclusory allegations.'" (quoting *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014))). Plaintiffs argue that "[a]ll of the employees that are potential employees [members] of the collective class were victims of a common compensation policy and/or practice of the Defendants, that violated the law." (Pls.' Mem., ECF No. 31, at 9.) Defendants maintain that Plaintiffs have asserted "merely that the members of the purported collective action shared similar job duties," which is not enough to show that the employees were victims of a common policy or plan that violated the FLSA. (Defs.' Mem., ECF No. 38, at 5.)

Having reviewed the amended complaint, the record, and Plaintiffs' motion, which includes the above-described affidavits, the Court finds that Plaintiffs have made a "modest factual showing" sufficient to grant conditional certification of a collective as

to Plaintiffs Jose Villalta, Selvin Garrido, and Defendants' employees who worked as roofing, siding, and concrete laborers (and other similarly titled professionals) within the last three (3) years.

### 1. Unlawful Policy

To bring a collective action, Plaintiffs must first show that they, themselves, were victims of Defendants' illegal pay practices. *See Cruz v. Ham N Eggery Inc.*, No. 15-CV-CV-3228 (JBW) (MDG), 2016 WL 4186967, at *4 (E.D.N.Y. Aug. 8, 2016); *Jeong Woo Kim v. 511 E. 5th St., LLC*, 985 F. Supp. 2d 439, 447 (S.D.N.Y. 2013). In this case, Plaintiffs have moved for collective certification under the FLSA based on claims of Defendants' failure to pay overtime as required by federal law. (*See* Am. Compl., ECF No. 28, ¶¶ 31, 35; *see also* Pls.' Mem., ECF No. 31, at 1–5.) Plaintiffs contend that "Defendants have maintained a continual practice of not paying any overtime premium to its employees for hours worked over forty (40) in a work week . . . ." (Pls.' Mem., ECF No. 31, at 1.) More specifically, Plaintiffs assert that they and "other employees who performed the same or similar job functions to them, also worked overtime hours (in excess of 40 per week), for which they were not paid the legally required overtime compensation, and who were all subjected to the same or similar payment practices and policies of the Defendants." (*Id.* at 3 (citing Villalta Aff., ECF No. 30-2; Garrido Aff., ECF No. 30-3).)

The Court finds that Plaintiffs have attested to facts sufficient at this stage to show that they were subject to an unlawful overtime policy in violation of the FLSA. Plaintiff Jose Villalta specifically avers that he "worked approximately seventy-two (72) hours per week during [his] employment with Defendants" and that he "did not receive time-and-a-half for each hour of overtime [he] worked." (Villalta Aff., ECF No. 30-2, ¶ 4.) Similarly, Plaintiff Selvin Garrido attests that he "worked approximately seventy-two (72) hours per week, or more, during [his] employment with Defendants" and that

10

he likewise did not receive time-and-a-half pay for his overtime hours. (Garrido Aff., ECF No. 30-3, ¶¶ 3–4.)

In this preliminary context, the Court finds these facts sufficient to allege a policy by which Plaintiffs did not receive overtime compensation, in possible violation of the FLSA. *See Han v. Shang Noodle House, Inc.*, No. 20-CV-2266 (PKS) (VMS), 2021 WL 3774186, at *9 (E.D.N.Y. Aug. 24, 2021) ("[T]o the extent Plaintiff alleges that Defendants paid him a flat monthly salary but did not pay him one-and-a-half times his regular rate for each hour worked in excess of 40 in a week, Plaintiff sufficiently alleges that he suffered a violation of federal overtime wage law."); *Chui v. Am. Yuexianggui of LI LLC*, No. 18-CV-5091 (SJF) (AKT), 2020 WL 3618892, at *7 (E.D.N.Y. July 2, 2020) (finding that an affidavit averring that plaintiff consistently worked more than 40 hours per week for defendants but "was paid a fixed salary . . . that did not properly compensate her for overtime hours" was sufficient to "allege that Plaintiff was subject to a policy or plan which violated the FLSA"); *Jing Fang Luo v. Panarium Kissena Inc.*, No. 15-CV-3642 (WFK) (SLT), 2016 WL 11263668, at *5 (E.D.N.Y. Nov. 23, 2016) ("Here, for purposes of conditional certification only, Plaintiffs established an 'unlawful policy' whereby Defendants violated the FLSA . . . ."), *report and recommendation adopted*, No. 15-CV-3642 (WFK) (SLT), 2017 WL 1216571 (E.D.N.Y. Mar. 30, 2017). "Further, based on this information, the Court 'may infer' that other [similarly situated employees] 'worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA.'" *Ni v. Red Tiger Dumpling House Inc.*, No. 19-CV-3269 (GRB) (AKT), 2020 WL 7078533, at *6 (E.D.N.Y. Nov. 30, 2020) (quoting *Genxiang Zhang v. Hiro Sushi at Ollie's Inc.*, No. 17-CV-7066 (DF), 2019 WL 699179, at *6 (S.D.N.Y. Feb. 5, 2019)).

2.  <u>Similarly Situated</u>

Next, the Court considers whether similarly situated employees exist with respect to Defendants' alleged FLSA overtime violations. *See Myers*, 624 F.3d at 555; *Young*, 229 F.R.D. at 54; *see also Scott v. Chipotle Mexican Grill, Inc.*, 954 F.3d 502, 515 (2d Cir. 2020) ("One of the principal conditions to proceeding collectively under § 216(b) is that the named plaintiffs be 'similarly situated' to the opt-in 'party plaintiff[s].'" (quoting 29 U.S.C. § 216(b))). Here, Plaintiffs have provided sufficient information for the purposes of conditional certification to find that Defendants' employees who worked as roofing, siding, or concrete laborers were assigned similar shifts for comparable pay and appear to have been paid a flat rate regardless of hours worked, in potential contravention of the FLSA's overtime provisions.

According to Plaintiffs' affidavits, at least thirty (30) or thirty-five (35) other employees — some of whom Plaintiffs name and describe with a basic level of specificity — worked more than forty hours a week but received a flat daily rate. (Villalta Aff., ECF No. 30-2, ¶¶ 8–11; Garrido Aff., ECF No. 30-3, ¶¶ 8–11.) According to their affidavits, Plaintiffs Villalta and Garrido know about these other employees because all of them received their cash payments from Juan Arce on Saturdays, and Plaintiffs were present to witness the other employees being paid. (Villalta Aff., ECF No. 30-2, ¶ 14; Garrido Aff., ECF No. 30-3, ¶ 13.) Additionally, both Plaintiffs aver the following: "[T]o my knowledge and based on our conversations, and based on my own observations, these other employees also regularly worked more than forty (40) hours per week, and were also not being paid for their overtime hours." (Villalta Aff., ECF No. 30-2, ¶ 15; *see also* Garrido Aff., ECF No. 30-3, ¶ 14.)

Based on the above, the Court finds that Plaintiffs' allegations are sufficient at this stage to establish a factual nexus between the respective situations of Plaintiffs and

the other roofing, siding, and concrete laborers "such that they are similarly situated 'victims of a common policy or plan that violated the law,'" as alleged in this motion. *Chui*, 2020 WL 3618892, at *7 (quoting *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701 (ADS) (AKT), 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019)). Contrary to Defendants' contention, this is not a situation in which "there is a total dearth of factual support for [Plaintiffs'] allegations of widespread wrongdoing . . . ." (*See* Defs.' Mem., ECF No. 38, at 6.)

Furthermore, to the extent that Plaintiffs and the other roofing, siding, and concrete laborers worked a different range of weekly hours and received a varied rate of pay, the Court notes that this "does not necessarily preclude a finding that [they] and [the] other employees were similarly situated with respect to their compensation of overtime wages." *Ni*, 2020 WL 7078533, at *8 (explaining that "[u]nder the FLSA and NYLL a fixed salary [will not] be deemed to include an overtime component in the absence of an express agreement," and that "[t]here is a rebuttable presumption that a daily or weekly salary does not include an overtime premium for the hours worked in excess of forty hours per week" (quotation marks omitted)). As discussed above, at this preliminary certification stage, "the court does not resolve factual disputes, decide ultimate issues on the merits or make credibility determinations." *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007); *see also Han*, 2021 WL 3774186, at *7 ("At the preliminary stage of an FLSA collective certification, 'whether [the plaintiff] will eventually succeed on the merits of his FLSA claim is immaterial.'" (quoting *Jeong Woo Kim*, 985 F. Supp. 2d at 447).

For these reasons, the Court finds that Plaintiffs have made the requisite "modest factual showing" necessary to be afforded the opportunity to send a notice to other roofing, siding, and concrete laborers employed by Defendants so that they may choose

to opt into the lawsuit. *See Wilson v. Jamaica Serv. Program for Older Adults, Inc.*, No. 21-CV-1263 (BMC), 2021 WL 4750098, at *3 (E.D.N.Y. Oct. 12, 2021) ("Plaintiff's allegations, while not particularly robust, are sufficient. They are not the sort of 'vague, conclusory, and unsupported assertions' that would fail to clear the very low bar courts have set for them in determining whether to conditionally certify a collective action." (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14-CV-3946, 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014))).

### C.  Notice of Pendency

"Once a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy . . . the court may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit." *Genxiang Zhang*, 2019 WL 699179, at *6; *see also Lynch*, 491 F. Supp. 2d at 367. The FLSA "vests the district court with broad discretion with respect to the notice of pending litigation to be provided to potential opt-in plaintiffs," and "[n]either the [FLSA] statute, nor the courts, specifically outline what form court-authorized notice should take, nor what provisions the notice should contain." *Yi Mei Ke v. JR Sushi 2 Inc.*, No. 19-CV-7332 (PAE) (BCM), 2021 WL 148751, at *12 (S.D.N.Y. Jan. 15, 2021) (second alteration in original) (quotation marks omitted). Here, Plaintiffs have proposed content for this notice (*see* Proposed Notice, ECF No. 30-1), to which Defendants raise several objections (*see* Defs.' Mem., ECF No. 38, at 7–9). For the reasons stated herein, the Court adopts Plaintiffs' proposed notice, in part, pursuant to the modifications set forth below. The Court addresses the Defendants' objections to Plaintiffs' proposed notice in turn.

1.   <u>Scope of Collective & General Contents of Notice</u>

First, Defendants argue that "[t]he identity of JOSE ARNALDO SOLIS

VILLALTA and his role as class/collective action representative should be disclosed at

the front of the proposed notice[.]" (Defs.' Mem., ECF No. 38, at 8.) Plaintiffs generally

oppose Defendants' objections as to the contents of the proposed notice. (*See* Pls.' Reply,

ECF No. 40, at 11.) The Court, however, agrees with Defendants that the notice should

clearly state that Jose Villalta is the class representative. Accordingly, the section

entitled "I. PURPOSE OF THIS NOTICE" should be edited to add Plaintiff Villalta's

name following mention of the "named Plaintiff." (*See* Proposed Notice, ECF No. 30-1,

at 2.)

Second, Defendants contend that the notice should include the "fact that Plaintiff

named a Defendant 101-11 86 Avenue Corp., that did not employ any employees or

have anything to do with JC * SONS HOME IMPROVEMENT CORP." (Defs.' Mem.,

ECF No. 38, at 8.) The Court concurs with Defendants that the notice should include all

named Defendants who have not been voluntarily dismissed from this action, but does

not conclude that the notice should contain any implied finding of fact since, at this

stage, the Court does not resolve disputed factual issues. *See Summa*, 715 F. Supp. 2d at

385. Accordingly, the notice need not include any comment regarding whether 101-11

86 Avenue Corp. "employ[ed] any employees or [had] anything to do with JC * SONS

HOME IMPROVEMENT CORP." (*See* Defs.' Mem., ECF No. 38, at 8.)

Third, Defendants request that the second sentence of the third paragraph on the

first page of the notice to be revised to read: "There has been no finding of liability by

the Court and, therefore, there is no money available now. There is no guarantee that

101-11 86 Avenue Corp., d/b/a JC & SONS HOME IMPROVEMENT CORP and JUAN

ARCE, an individual will be found liable for any of the claims asserted in the collective

action [and] no guarantee that you will receive any distribution in the class action or collective action." (*Id.*) The Court agrees that some mention in the notice should be made that the outcome of the case has not been determined and that there is no money available now. However, the Court finds that language similar to the following conveys this information in a more neutral way: "No determination has been made that you are owed any amount of money, and the Court is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit. You are under no obligation to respond to this notice."

Similarly, Defendants request that the following be deleted from page one of the proposed notice: "This is a court-authorized notice. This is not a solicitation from a lawyer." (Defs.' Mem., ECF No. 38, at 9 (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).) Defendants request that the line be deleted from the proposed notice "[t]o avoid even the appearance of judicial endorsement of the merits of the action . . . ." (*Id.*) However, the Court finds that the language suggested in the above paragraph or similar language makes clear that "the Court is not endorsing the merits of this lawsuit" and is sufficient to avoid the appearance of judicial endorsement.

Fourth, Defendants request that the paragraph after "TO:" on page one of the proposed notice (*see* Proposed Notice, ECF No. 30-1, at 1) should be revised to read: "If you would like to become a member of the FLSA collective action and believe that you have not been paid in full for your overtime wages . . . ." (Defs.' Mem., ECF No. 38, at 8.) The Court denies Defendants' request because the notice is to be provided to similarly situated employees to Plaintiffs, which may not include other employees who want to join the class of Plaintiffs. Accordingly, for clarity, the "TO:" paragraph should make plain that the notice is directed to roofing, siding, or concrete laborers (or other similarly titled professionals).

Fifth, Defendants request that the proposed notice be modified to include a section titled: "Will I need to be actively involved in this action?" (Defs.' Mem., ECF No. 38, at 8.) According to Defendants, the requested section should be modified to "include references to the facts that putative class and collective action members may be required to participate in discovery, including to appear for depositions and respond to written discovery." (*Id*. at 8–9 (citing *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).) The Court grants Defendants' request since "such text is routinely accepted." *Whitehorn*, 767 F. Supp. 2d at 450 (citing *Bah v. Shoe Mania, Inc.*, No. 08-CV-9380 (LTS) (AJP), 2009 WL 1357223, at *3–4 (S.D.N.Y. May 13, 2009)).

2.   <u>Notice Period</u>

As discussed, Plaintiffs have moved for an order conditionally certifying this case as a collective action on behalf of all similarly situated, non-exempt employees of Defendants within the last three (3) years, and for authorization to distribute notice of the action to potential opt-in plaintiffs. (*See* Am. Compl., ECF No. 28, ¶ 29; Pls.' Mem., ECF No. 31, at 1; Proposed Notice, ECF No. 30-1.) Defendants request that only employees who worked for Defendants in the two years prior to the date of the notice be part of the collective because the statute of limitations applicable to a claim under the FLSA is two years after the cause of action accrued. (Defs.' Mem., ECF No. 38, at 7 (citing 29 U.S.C. § 255(a)).)

The statute of limitations under the FLSA is generally two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). At the first stage of conditional certification, "allegations of willful conduct are sufficient to apply the three-year statute of limitations for purposes of certifying the class." *Agonath*, 2019 WL 1060627, at *4; *see also Valerio v. R.N.C. Indus., LLC*, 314 F.R.D. 61, 73–74 (E.D.N.Y. 2016) (collecting cases).

17

However, as Plaintiffs point out, they have pleaded and sufficiently alleged the willfulness of Defendants' conduct. (Pls.' Reply, ECF No. 40, at 9; Am. Compl., ECF No. 28, ¶¶ 2–3, 25–27, 29, 32–35, 45, 52, 55.) Accordingly, a three-year statute of limitations is appropriate at this stage.

Related to the calculation of the applicable limitations period, Plaintiffs request both that the notice be "sent to all similarly situated employees who worked for the Defendants, within three (3) years of this case being filed" and "issued to all similarly-situated employees employed [by] the Defendants in the three (3) years preceding the notice date." (Pls.' Mem, ECF No. 31, at 13 (edited for a typographical error)). "'[B]ecause equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Valerio*, 314 F.R.D. at 74 (quoting *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)); *see also Yi Mei Ke*, 2021 WL 148751, at *14 ("In this Circuit, courts routinely calculate the notice period from the date on which the lawsuit was filed (not the date of conditional certification)[.]" (quotation marks omitted)).

Here, the Court concludes that "the remedial purposes of the FLSA are best served [] by applying the three-year statute of limitations from the date of the filing of the Complaint in this action." *Valerio*, 314 F.R.D. at 74 (quotation marks omitted). Accordingly, the Court directs that notice be provided to potential opt-in plaintiffs employed by Defendants in the three (3) years prior to January 14, 2020, the date the Complaint was filed in this case. The parties are therefore directed to edit the "TO:" section on the first page of the notice to reflect that the notice is being provided to potential opt-in plaintiffs employed by Defendants as roofing, siding, or concrete

laborers (or other similarly titled professionals) in the three (3) years preceding January 14, 2020. (*See* Proposed Notice, ECF No. 30-1, at 1.)

3. Opt-In Period

Plaintiffs contend that the opt-in period in this case should run for ninety (90) days from the date of this Memorandum and Order. (*See* Pls.' Mem., ECF No. 31, at 15, 18; Pls.' Reply, ECF No. 40, at 11–12.) In general, courts only allow a ninety-day opt-in period "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." *Chui*, 2020 WL 3618892, at *10 (quoting *Whitehorn*, 767 F. Supp. 2d at 452). In contrast, "[c]ourts often grant 60-day opt-in periods . . . where the record suggests that the proposed collective is modest in number." *Han*, 2021 WL 3774186, at *13. Here, the record suggests that the proposed collective is moderate in size, and Plaintiffs have not presented special circumstances to justify extending the opt-in period.

Accordingly, the proposed notice shall be modified to provide for sixty (60) days during which potential plaintiffs may opt in. *See id.*; *Ni*, 2020 WL 7078533, at *10; *Chui*, 2020 WL 3618892, at *10.

4. Equitable Tolling

Plaintiffs also request that "the Court . . . exercise its judicial discretion to equitably toll the limitations period for the potential opt-in Plaintiffs in order to 'avoid inequitable circumstances' on their FLSA claims." (Pls.' Mem., ECF No. 31, at 17; *see also id.* at 18.)

"Under the FLSA, the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit." *Ni*, 2020 WL 7078533, at *10 (citing 29 U.S.C. § 256(b)). However, the Court "may toll the limitations period to avoid inequitable circumstances under the doctrine

19

of equitable tolling." *Agonath*, 2019 WL 1060627, at *4 (quotation marks omitted). In determining whether equitable tolling is appropriate, "a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Ni*, 2020 WL 7078533, at *10 (quoting *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80–81 (2d Cir. 2003)); *see also Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935 (SMG), 2011 WL 844963, at *1–2 (E.D.N.Y. Mar. 8, 2011).

Courts in this circuit have permitted equitable tolling while a plaintiff's motion for conditional certification is pending before the court through the expiration of the opt-in period. *See, e.g.*, *Han*, 2021 WL 3774186, at *13; *cf. Ni*, 2020 WL 7078533, at *10; *Chui*, 2020 WL 3618892, at *10; *Yahraes*, 2011 WL 844963, at *2; *McGlone v. Cont. Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012). Here, given the length of time that has passed since the instant motion was filed and the relative diligence of Plaintiffs' counsel in pursuing conditional certification, the limitations period will be tolled from July 29, 2021, the date Plaintiffs filed their conditional certification motion, until sixty (60) days from the Court's final approval of the revised notice. *See Han*, 2021 WL 3774186, at *13; *Ni*, 2020 WL 7078533, at *10; *McGlone*, 867 F. Supp. 2d at 445.

5. Translation of Notice & Consent to Join Forms

Plaintiffs request that in addition to English, the notice and consent form be translated into Spanish. (*See* Pls.' Mem., ECF No. 31, at 15, 16; Pls.' Reply, ECF No. 40, at 11.) Defendants do not oppose this request. (*See generally* Defs.' Mem., ECF No. 38.)

Accordingly, and given that it promotes the remedial purposes of the FLSA to permit notice to be "translated into the mother tongue of non-English speaking groups of potential plaintiffs," the Court authorizes Plaintiffs to circulate the notice in English

and Spanish. *Valerio*, 314 F.R.D. at 76 (quoting *Colon v. Major Perry St. Corp.*, No. 12-CV-3788 (JPO), 2013 WL 3328223, at *8 (S.D.N.Y. July 2, 2013)). The Court further directs Plaintiffs to provide Defendants with a copy of the Spanish translation of the revised notice pursuant to the timeline outlined below.

6.   Counsel Information, Legal Representation & Fee Arrangement in Notice

Defendants ask the Court to direct Plaintiffs to include defense counsel's contact information on the proposed notice and also argue that "[d]isclosure of Plaintiffs' counsel's fees should be clear that the fees and expenses of Plaintiffs' counsel will be deducted from the gross settlement/judgment amount, if any, and reduce the amount available to members of the collective action." (Defs.' Mem., ECF No. 38, at 8 (corrected for typographical error).) Additionally, Defendants contend that information regarding Plaintiffs' counsel's fees "should be prominently disclosed on the first page of the proposed notice." (*Id.* (corrected for typographical error).)

The Court finds that including defense counsel's information on the notice is appropriate "so as to give putative collective members full counsel information." *Han*, 2021 WL 3774186, at *13 (citing *She Jian Guo*, 2014 WL 5314822, at *4); *see also Wilson*, 2021 WL 4750098, at *4. However, such information must "be included in a way that clearly identifies it as such." *Nyarko v. M&A Projects Restoration Inc.*, No. 18-CV-5194 (FB) (ST), 2021 WL 4755602, at *13 (E.D.N.Y. Sept. 13, 2021), *report and recommendation adopted*, No. 18-CV-5194 (FB) (ST), 2021 WL 4472618 (E.D.N.Y. Sept. 30, 2021).

As to the description of Plaintiffs' counsel's fee arrangement, the Court finds Plaintiffs' current draft language concerning the fee arrangement to be sufficiently clear for the present purposes. *See Han*, 2021 WL 3774186, at *13. The proposed notice clearly indicates that opt-in plaintiffs "do not have to pay out-of-pocket or upfront fees for the services of Plaintiff's attorneys or for any costs of bringing this lawsuit. The attorneys

21

for the Plaintiff are being paid on a contingency fee basis as described in the 'Consent to Sue' form." (Proposed Notice, ECF No. 30-1, at 4.) The "Consent to Sue" form, in turn, indicates that if opt-in plaintiffs choose to be represented by Plaintiffs' counsel and if "Plaintiffs are successful, all costs expended by attorneys on [their] behalf will be deducted pro rata from [their] settlement or judgment first," but that if no settlement is reached, Plaintiffs "will not be obligated to pay any fees or costs to plaintiffs' counsel." (*Id.* at 6.) The Court does not find that the details regarding Plaintiffs' counsel's fees must be disclosed on the first page of the proposed notice.

However, the Court does find that the section entitled "VIII. YOUR LEGAL REPRESENTATION IF YOU JOIN" (*id.* at 4), and the "Consent to Sue" form (*id.* at 6), need to be edited to more clearly indicate that opt-in plaintiffs can hire their own lawyer and that they do not have to be represented by Plaintiffs' counsel to join the collective. Starting with the section entitled "VIII. YOUR LEGAL REPRESENTATION IF YOU JOIN" (*id.* at 4), the beginning of that section starts with: "If you join this lawsuit, your[6] will also be represented by Plaintiff's attorneys," and the section lists the contact information of Plaintiffs' counsel. (*Id.*) Meanwhile, the information that putative collective members are free to hire their own lawyers or represent themselves *pro se* is included at the end of the section, with: "If you want to join this lawsuit but do not want to be represented by Helen F. Dalton & Associates, P.C., you have the right to hire your own attorney, at your own cost." (*Id.* at 4–5.)

In the revised notice, potential opt-in plaintiffs must be advised of their right to hire their own counsel at the beginning of the section titled "VIII. YOUR LEGAL REPRESENTATION IF YOU JOIN." (*See id.* at 4.)

---

[6] The Court respectfully notes this typographical error and requests that "your" be changed to "you" should this phrasing be retained in the final proposed notice.

7.   Distribution of the Notice of Pendency

Plaintiffs wish to disseminate the Notice by:

(1) sending the notice by mail to class members' last known addresses, with permission to re-mail if the notice is returned as undeliverable, and (2) requiring Defendants to post notice on the employee notice board, or alternatively, in a prominent location within the venue where current collective class members start and end their respective shifts, namely, Defendants' office located at 84-72 130th Street, Kew Gardens, New York 11415.

(Pls.' Mem., ECF No. 31, at 15; *see also* Pls.' Reply, ECF No. 40, at 12.) For the reasons that follow, the Court grants Plaintiffs' requested methods of distributing the notice. (*See* Pls.' Mem., ECF No. 31, at 15–17; Pls.' Reply, ECF No. 40, at 12.)

First, dissemination of the notice by mail is appropriate. *See, e.g.*, *Panora v. Deenora Corp.*, No. 19-CV-7267 (BMC), 2020 WL 7246439, at *5 (E.D.N.Y. Dec. 9, 2020); *see also Nyarko*, 2021 WL 4755602, at *14–15. Second, posting the notice at Defendants' physical business location is a generally acceptable form of distributing information related to such notices, and is therefore approved. *Ni*, 2020 WL 7078533, at *12 ("Courts in the Second Circuit 'regularly approve plaintiffs' requests to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms.'" (quoting *Castillo v. Perfume Worldwide Inc.*, No. 17-CV-2972 (JS) (AKT), 2018 WL 1581975, at *17 (E.D.N.Y. Mar. 30, 2018))).

\*   \*   \*   \*   \*

The Court approves the contents of the proposed notice, save for the issues described above. Once Plaintiffs have edited the notice of pendency and consent to sue forms to reflect the requirements above, Plaintiffs shall serve a draft (in both English and Spanish) on Defendants by **March 1, 2022**, and by **March 15, 2022**, Defendants shall serve any objections or give their consent. By **March 29, 2022**, the parties shall file a joint

motion for Court approval, which must include the final version of the notice form. Upon the Court's approval of the final version, Plaintiffs shall distribute the notice within two weeks. Finally, all opt-in consent forms must be filed with the Clerk of the Court within sixty (60) days from the date the Court approves the final notice form.[7]

### 8. Production of Identifying Information

Finally, Plaintiffs ask that the Court order Defendants to "provide Plaintiffs' counsel in electronically readable format, the names, addresses, e-mail addresses, employee number or unique identifier, telephone numbers, last four digits of the social security numbers, job titles and dates of employment of all potential class members." (Pls.' Mem., ECF No. 31, at 18; *see also id.* at 14–15.) "In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members." *Taveras v. PSD Freeport Inc.*, No. 19-CV-6243 (MKB) (RER), 2021 WL 1405994, at *7 (E.D.N.Y. Apr. 14, 2021) (quoting *Valerio*, 314 F.R.D. at 74–75). Defendants are ordered to produce the names, addresses, telephone numbers, email addresses, job titles, and dates of employment of potential collective members[8] within fourteen days of entry of this Memorandum and Order. *See Nyarko*, 2021 WL 4755602, at *12; *Panora*, 2020 WL 7246439, at *4.

---

[7] This method will ensure all parties receive notice of opt-in plaintiffs' joining in the lawsuit, as filing with the Clerk of the Court will "cause the Consents to be docketed into the ECF system and thus served on all counsel of record." *See Lujan v. Cabana Mgmt.*, No. 10-CV-755 (ILG), 2011 WL 317984, at *13–14 (E.D.N.Y. Feb. 1, 2011).

[8] At this juncture, the Court does not order the production of partial social security numbers absent an application and supporting authority for why provision of that personal identifying information is needed.

### III.   Remaining Discovery Schedule

On January 3, 2022, the parties filed a joint motion requesting an extension of time for the parties to complete all discovery. (*See* Jan. 3, 2022 Joint Letter, ECF No. 41.) The parties requested that the completion of all discovery be extended to sixty (60) days following the Court's determination of Plaintiffs' motion for conditional certification. (*Id.*) The Court denied the parties' discovery motion without prejudice, and extended discovery until **March 5, 2022.** (*See* Jan. 4, 2022 ECF Order.) The Court noted that "the parties are granted leave to request additional time should that be necessary following the determination of Plaintiff's Motion for Collective Certification." (*Id.*) The parties are directed to file a joint status report by **March 5, 2022**, informing the Court as to the status of discovery.

### CONCLUSION

For the reasons set forth above, Plaintiffs' motion for conditional certification as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) (Pls.' Mot., ECF No. 29) is GRANTED, subject to the limitations discussed in this Memorandum and Order.

The Court further orders that:

(1) Plaintiffs shall serve a draft notice of pendency and consent to sue form (in both English and Spanish) on Defendants by **March 1, 2022**, and by **March 15, 2022**, Defendants shall serve any objections or give their consent. By **March 29, 2022**, the parties shall file a joint motion for Court approval, which must include the final version of the notice of pendency and consent to sue form;[9]

---

[9] The Court notes that Defendants also made an unspecific objection to the "bold lettering" included in the proposed notice. (Defs.' Mem., ECF No. 38, at 8.) The parties are respectfully directed to meet and confer regarding formatting and phrasing concerns in advance of submitting the proposed notice and consent to sue form to the Court by March 29, 2022.

25

(2) within fourteen (14) days of this Order, by **March 1, 2022**, Defendants are to produce to Plaintiffs in electronically readable format, the names, addresses, e-mail addresses, telephone numbers, job titles, and dates of employment of roofing, siding, and concrete laborers (and other similarly titled professionals) whom Defendants employed at any time in the three (3) years prior to January 14, 2020;

(3) within thirty (30) days of final approval by the Court, Plaintiffs or their designated representative shall cause a copy of the notice form to be disseminated to the putative collective by first class mail and email and to be posted at 84-72 130th Street, Kew Gardens, New York, 11415;

(4) the statute of limitations period for opt-in plaintiffs shall be tolled from July 29, 2021, the date Plaintiffs filed this conditional certification motion, until the close of the opt-in period, i.e., sixty (60) days from the Court's final approval of the revised notice; and

(5) the parties are directed to file a joint status report by **March 5, 2022**, informing the Court as to the status of discovery and whether the parties require an extension of the discovery deadline.

**SO ORDERED.**

Dated:    Brooklyn, New York
          February 15, 2022

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE